UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------
JAMILYA BLISS,

        Plaintiff,

        -against-

MXK RESTAURANT CORP. d/b/a
REMIX, *et ano.*,

        Defendants.
------------------------------------------------

16cv2676

OPINION & ORDER

WILLIAM H. PAULEY III, District Judge:

        Plaintiff Jamilya Bliss brings this discrimination suit against Defendant MXK Restaurant ("MXK") and its owner, Defendant Panagiotis Kotsonis, under Title VII, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Defendants move to dismiss Bliss's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. For the following reasons, Defendants' motion to dismiss is granted.

## BACKGROUND

        Bliss has been employed at Defendants' Remix nightclub since January 2002, starting as a bartender and eventually reaching the position of Manager. Complaint, dated April 11, 2016 ("Compl.") ¶ 9. Throughout the past fourteen years, Bliss alleges, Defendants have subjected her to a hostile work environment based on her gender (female) and her sexual orientation (homosexual). Compl. ¶10. Bliss alleges three sources of hostility and harassment during her many years of employment. First, Defendants required her to bartend at private "sex parties" at the nightclub, during which Bliss "[was] subjected to nudity, prostitution, and people performing sexual acts in her presence." Compl. ¶ 11. Second, Kotsonis "routinely and

regularly made derogatory comments regarding people within the LGBT community, referring to gay people as 'faggots' . . . in front of Bliss despite the fact that he was aware of her sexual orientation." Compl. ¶ 12. Finally, Kotsonis displayed "a discriminatory animus toward black/African Americans . . . routinely treat[ing] African American employees in a derogatory manner," firing them "on a whim," and making frequent use of racial epithets. Compl. ¶ 13. Although Bliss claims that she continuously objected to these actions (and that Kotsonis ignored her) (Compl. ¶ 15.), she does not allege that she herself was the target of racial discrimination[1] or that Kotsonis directed any epithets toward her.

The relationship between Bliss and Kotsonis took a turn for the worse in November 2014 when Kotsonis fired a black male employee of Remix for reasons that were unclear to Bliss. Compl. ¶ 16. Bliss told that terminated employee of "her belief that Kotsonis was racist" and advised him to "pursue a claim based on that fact." Compl. ¶ 16. In response, Bliss alleges, Kotsonis undertook a series of retaliatory measures that included yelling at her, threatening to fire her in front of other employees, removing her managerial title (but not her managerial tasks), and withholding shift pay and a portion of her tips. See Compl. ¶¶ 17–18. According to Bliss this conduct, which continues to date, constitutes unlawful retaliation against the protected activity of encouraging her former co-worker to sue. There is no suggestion in the pleadings that the former co-worker ever pursued a claim against MXK or Kotsonis.

Bliss brings three types of discrimination claims: (1) gender discrimination due to a hostile work environment under Title VII, the NYSHRL, and the NYCHRL (Compl. ¶¶ 22, 25.); (2) sexual-orientation discrimination due to a hostile work environment under the NYSHRL and NYCHRL (Compl. ¶ 27.); and (3) discriminatory retaliation under Title VII, the NYSHRL,

---

[1] The Complaint does not mention Bliss's race, and her claim seems to be that she found Kotsonis's racism toward others offensive, thus creating a hostile work environment for her as a woman.

2

and the NYCHRL (Compl. ¶¶ 24, 29). She has sued Kotsonis in his individual capacity for aiding and abetting the NYSHRL and NYCHRL violations. Compl. ¶¶ 26, 28, 30.

DISCUSSION

I. **Legal Standard**

To survive a motion to dismiss, a complaint "must plead 'enough facts to state a claim for relief that is plausible on its face.'" Patane v. Clark, 508 F.3d 106, 111–12 (2d Cir. 2007) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964–65 (2007)). Although the Court must accept all material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor, Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998), a plaintiff must still offer "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action" to establish grounds for relief. Twombly, 127 S.Ct. at 1964–65. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

II. **Hostile Work Environment – Gender Discrimination**

i. Title VII and NYSHRL Claims

Title VII protects employees against discrimination resulting from a hostile work environment. See Harris v. Forklift Sys. Inc., 510 U.S. 17, 21 (1993). To prevail on a hostile work environment claim, a plaintiff must show that "the complained of conduct (1) is objectively severe and pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [membership in a protected category]." Patane, 508 F.3d at 113. Relevant factors as to the hostility of the

3

workplace include: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." Patane, 508 F.3d at 113. However, Title VII "does not prohibit employers from maintaining nasty, unpleasant workplaces, or even ones that are unpleasant for reasons that are sexual in nature." Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 513 (S.D.N.Y. 2010); see also Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 ("Title VII . . . does not set forth a general civility code for the American workplace.") (internal quotations omitted). In addition to pleading abusive or offensive conduct, "it is axiomatic . . . [that] plaintiff must demonstrate that the conduct occurred because of her [protected characteristic.]" Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002). "Because New York courts require the same standard of proof for claims brought under the NY[S]HRL as for those brought under Title VII, we analyze these claims in tandem." Leopold v. Baccarat Inc., 174 F.3d 261, 264 (2d Cir. 1999).

Here, Bliss fails to establish the necessary causal link between Defendants' offensive conduct and her gender. First, Kotsonis's alleged derogatory comments about LGBT persons and African Americans, however loathsome, are irrelevant to her gender discrimination claims; there is nothing to suggest that they created a hostile work environment because of Bliss's gender. The Title VII inquiry "is an individualized one," Krasner, 680 F. Supp. 2d at 514, and a hostile work environment "is actionable . . . only when it occurs because of an employee's sex, or other protected characteristic." Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) (emphasis added). Bliss cannot simply allege a series of offensive racist and homophobic comments by her supervisor, point out that she is a woman, and thereby state a claim for gender discrimination. Even if we accept—as we must on a motion to dismiss—that Kotsonis is as

4

repugnant Bliss makes him out to be, the allegations about his racially motivated firings and frequent use of derogatory epithets cannot support a claim for a hostile work environment based on gender.

Bliss's allegations about being required to bartend at sex parties also do not state a claim for hostile work environment on the basis of her gender. Bliss cites to Petrosino v. Bell Atlantic for the proposition that offensive conduct directed at all employees can still be more offensive to certain employees due to their gender. 385 F.3d 210, 222 (2d Cir. 2004) ("[T]he fact that much of [the offensive conduct] was not directed specifically at [the plaintiff] . . . does not, as a matter of law, preclude a jury from finding" a hostile work environment."). This comparison only serves to highlight the insufficiency of Bliss's pleadings. In Petrosino, the plaintiff complained of persistent "sexually offensive garage banter" among male employees and "crude sexual graffiti scrawled by co-workers" on office walls, communicating a "generally low view of women." 385 F.3d at 214. Because "the depiction of women in the offensive jokes and graphics was uniformly sexually demeaning [toward women]," the court found that the conduct was "particularly insulting to women because [it] cast women in a demeaning role: as objects of sex-based ridicule and subjects for sexual exploitation." Petrosino, 385 F.3d at 222, 224. Here, Bliss merely alleges that while she bartended she was "subjected to nudity, prostitution, and people performing sexual acts in her presence." Compl. ¶ 11. She does not claim that she was subjected to these sights because she is a woman, nor do her allegations suggest that observing these parties was necessarily more offensive to women. Accordingly, Bliss fails to state a claim for a hostile work environment based on gender.

ii. NYCHRL Claim

"As amended, the NYCHRL requires an independent analysis" from Title VII and NYSHRL claims. Mihalik v. Credit Agricole Cheuvreux N. America, Inc., 715 F.3d 102, 109 (2d Cir. 2013). Courts must analyze NYCHRL claims separately, construing its provisions "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." Mihalik, 715 F.3d at 109 (quoting Albunio v. City of New York, 16 N.Y. 3d 472, 477–78 (N.Y. 2011). The NYCHRL is not a "general civility code," however, and "plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive." Mihalik, 715 F.3d at 110 (quoting Williams v. N.Y.C. Housing Auth., 61 A.D. 3d 62 (1st Dep't 2009)). Bliss's NYCHRL gender discrimination claims suffer from the same causation problem as do her Title VII and NYSHRL claims; she has not alleged that Defendants' conduct created a hostile work environment "because of" her gender. NYC ADMIN. CODE § 8-107(a); see also Williams, 61 A.D. 3d at 77 (noting that although the "severe and pervasive" standard does not apply under the NYCHRL, "liability is normally determined by the existence of differential treatment (i.e., unwanted gender-based conduct)") (emphasis added). These claims are dismissed.

III. **Retaliation**

Title VII prohibits employers from retaliating against an employee who complains of employment discrimination. See 42 U.S.C. § 2000e-3(a); Burlington N. & Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2415 (2006). To establish a prima facie case of retaliation, a plaintiff must "adduce evidence sufficient to permit a rational trier of fact to find (1) that he engaged in a protected participation or opposition under Title VII . . . , (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e. that a retaliatory

6

motive played a part in the adverse employment action." Kessler v. Westchester Cty. Dep't of Soc. Serv., 461 F.3d 199, 205–06 (2d Cir. 2006) (internal alterations omitted). A plaintiff need not plead all of the elements to survive a motion to dismiss, see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510–12 (2002), but still must plead facts plausibly showing that she suffered an adverse action. See Iqbal, 556 U.S. at 678. "Retaliation claims under NYSHRL and NYCHRL are subject to the same analysis" as retaliation claims under Title VII. Morris v. Temco Serv. Indus., Inc., 2011 WL 6761075, at *3 (S.D.N.Y. Dec. 13, 2011).

  i.  Whether Bliss Engaged in a Protected Activity

  There are two types of protected activities under Title VII—"opposition" and "participation." See Littlejohn v. City of New York, 795 F.3d 297, 316 (2d Cir. 2015). "The opposition clause makes it unlawful for an employer to retaliate against an individual because she 'opposed any practice' made unlawful by Title VII, while the participation clause makes it unlawful to retaliate against an individual because she 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under' Title VII." Littlejohn, 795 F.3d at 316 (quoting 42 U.S.C. § 2000e-3(a)). A plaintiff 'need not prove the merit of [the] underlying discrimination complaint" to state a retaliation claim, "but only that [she] was acting under a good faith, reasonable belief that a violation existed." Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990).

  Bliss argues that her advice to her co-worker constitutes both opposition to Kotsonis's racial discrimination and participation in the co-worker's hypothetical proceeding against Kotsonis. The participation argument is not compelling. Although Title VII's "participated in any manner" language is "expansive and seemingly contains no limitations," Deravin v. Kerik, 335 F.3d 195, 203 (2d Cir. 2003), the cases cited by Bliss involved situations where there was in

7

fact a Title VII "investigation, proceeding, or hearing" for the employee to participate in. See Deravin, 335 F.3d at 204 (holding that "defending oneself against charges of discrimination" in a separate Title VII action constitutes protected activity); Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 175 ("[W]e conclude that Congress intended the anti-retaliation clause to protect a volunteer witness poised to testify in support of a co-worker's discrimination claims."). Here, by contrast, Bliss merely told another employee that she suspected racial motivations in his firing and advised him to file a discrimination suit, which apparently he never did. This is not sufficient to plead participation in a Title VII proceeding.

Bliss also fails to plead that she opposed any practice made unlawful by Title VII. The scope of the opposition clause is broad, and protects "[formal] as well [as] informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, [and] protesting against discrimination by industry or by society in general." Sumner, 899 F.2d at 209. Even within this forgiving framework, Bliss's allegations fall short; the extent of her opposition was that she "expressed to the employee her belief that Kotsonis was racist and that the employee should pursue a claim based on that fact." Compl. ¶ 16. This is a far cry from even the "informal" protests outlined by the Sumner court, which at the very least involved some act of complaining or protesting. Simply expressing one's belief about management's racist tendencies in confidence to a co-worker and giving (apparently unheeded) advice cannot qualify as opposition to a Title VII violation. As Bliss has not alleged that she engaged in a protected activity, her retaliation claims are dismissed.

IV. **Hostile Work Environment – Sexual Orientation**

"Title VII does not prohibit harassment or discrimination because of sexual orientation." McKenzie v. Gibson, 2008 WL 3914837, at *4 (S.D.N.Y. August 25, 2008). Although the

8

NYSHRL and NYCHRL cover sexual orientation discrimination, a court "may decline to exercise supplemental jurisdiction over a [pendent state law] claim" if the court "has dismissed all [federal] claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).

Accepting the allegations in the Complaint as true, this Court notes that Kotsonis's ignorant and demeaning treatment of LGBT persons may well expose him to liability under the state and city human rights laws—while these statutes do not create a general civility code, surely they protect human dignity in the workplace. Having dismissed Bliss's federal claims, however, this Court declines to exercise jurisdiction over her NYSHRL and NYCHRL sexual-orientation discrimination claims. These claims are dismissed without prejudice to re-filing them in state court.

V.     **Kotsonis's Individual Liability**

Bliss brings claims against Kotsonis individually under the NYSHRL and NYCHRL for aiding and abetting discriminatory practices. Under the NYSHRL, it is unlawful "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. EXEC. LAW § 296(6). A defendant violates this section when he "actually participates in the conduct giving rise to a discrimination claim." Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 724 (1998). Individual liability exists under the NYCHRL according to similar standards. See Britt v. Merrill Lynch & Co., Inc., 2011 WL 4000992, at *11 (S.D.N.Y. Aug. 26, 2011) ("Unlike under Title VII, individuals may be held liable under NYSHRL and

NYCHRL if they actually participated in the conduct giving rise to the discrimination claim.") (internal quotations omitted).

Bliss's individual claims fail for two reasons. First, as a matter of law as well as logic, "an individual cannot aid or abet his or her own violation of the Human Rights Law." Hardwick v. Auriemma, 11 A.D. 3d 465, 468 (1st Dep't 2014). Any claims against Kotsonis for aiding and abetting his own discriminatory actions (e.g. his alleged use of racial epithets) fail on these grounds. Second, "[w]here no violation of the Human Rights Law by another party has been established . . . an individual employee cannot be held liable for aiding or abetting such a violation." Strauss v. N. Y. State Dept. of Education, 26 A.D. 3d 67, 73 (Third Dep't 2005). Thus, the dismissal of Bliss's claims against MXK is fatal to her aiding and abetting suit against Kotsonis. To the extent that Bliss has viable sexual-orientation discrimination causes of action against MXK, her aiding and abetting claims against Kotsonis as to those activities are dismissed without prejudice to re-file in state court.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted with respect to her hostile work environment and retaliation claims. This Court declines to exercise supplemental jurisdiction over Bliss's sexual-orientation hostile work environment claims under the NYSHRL and NYCHRL. Accordingly, the Complaint is dismissed. The Clerk of Court is directed to terminate the motion pending at ECF No. 20 and mark this case closed.

Dated: November 14, 2016
     New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.